IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. CCB-16-00103 |
| | : | |
| VICTOR MIRANDA-RIVERA | : | |

**MEMORANDUM**

Victor Miranda Rivera is charged by indictment with one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). Pending before the court are (1) the defendant's motion to dismiss the indictment, (ECF No. 18), and (2) the defendant's motion to suppress tangible and derivative evidence and statements, (ECF No. 19). A motions hearing was held on August 4, 2016. For the reasons that follow, the defendant's motion to dismiss will be granted, and his motion to suppress will be denied as moot.

**BACKGROUND**

In 2006, at age 16, Mr. Miranda Rivera left his home country of El Salvador and came to the United States as an undocumented immigrant. Approximately five years later, on January 28, 2011, Mr. Miranda Rivera was detained by Immigration and Customs Enforcement ("ICE") officials and served with a Notice to Appear in removal proceedings. Mr. Miranda Rivera appeared without counsel before an immigration judge ("IJ") in Baltimore, Maryland via a video teleconference hearing on February 9, 2011. (Mot. Dismiss, Ex. B, Hr'g Tr., ECF No. 18-2). At that hearing, the IJ determined that Mr. Miranda Rivera was prima facie removable because he admitted to the allegations contained in the Notice to Appear. The IJ then asked questions to ascertain Mr. Miranda Rivera's eligibility for removal. During this questioning, the IJ asked Mr. Miranda Rivera if he had "any fear that you will be persecuted or tortured if you had to go back

1

to El Salvador?" *Id.* at 6:17–18.  Mr. Miranda Rivera replied, "Honestly my only fear is that when I was 16 years old, I was asked to join a gang and I didn't want to, so they just wanted to kill me. But I feel there's no other option. I'm just moving to another place in El Sa[l]vador. And my other concern was that my fiancé, she's three months pregnant and I just was looking for the chance to take her out of the country with me." *Id.* at 6:19–25; Ltr. Re: Transcript Corr., ECF No. 28-1.  The IJ then informed Mr. Miranda Rivera that, "[w]ith respect to what you told me about the gang, you know, unfortunately under our law right now, that's just not a basis for asylum. . . . It doesn't sound like that would give a basis for relief." *Id.* at 7:7–15.  The IJ inquired as to Mr. Miranda Rivera's interest in voluntary departure; however, due to financial constraints, Mr. Miranda Rivera declined to explore that option. *Id*. at 8:6–9:13.  The judge issued a removal order, and Mr. Miranda Rivera was deported to El Salvador on March 7, 2011. At some point thereafter he returned to the United States. On March 17, 2016, the government filed the indictment currently under review, charging Mr. Miranda Rivera with illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(1).

## ANALYSIS

Mr. Miranda Rivera moves to dismiss the indictment, claiming the illegal reentry charge is predicated on an invalid deportation order.[1]  The Fourth Circuit recently reviewed the law governing collateral challenges to deportation orders in illegal reentry cases:

> Under § 1326(d), a defendant charged with illegal reentry is permitted to collaterally attack a prior removal order. To prevail, the defendant must show that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." [8 U.S.C. § 1326(d)]. Because "[t]hese requirements are listed in the conjunctive, . . . a defendant must

---

[1] Collateral attacks on the deportation order are allowed because they address a required element of 8 U.S.C. § 1326(a)(1): removal after having "been denied admission, excluded, deported, or removed" from the United States.  *See United States v. Mendoza-Lopez*, 481 U.S. 828, 832–34 (1987).

> satisfy all three in order to prevail." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005) (internal quotation marks omitted). When the defendant satisfies all of § 1326(d)'s requirements, the district court must dismiss the illegal reentry charge. *See id.*

*United States v. Lopez-Collazo*, 824 F.3d 453, 458 (4th Cir. 2016). Mr. Miranda-Rivera alleges that he was subject to a fundamentally unfair entry of his deportation order arising from a flawed deportation proceeding. The government contends that the 2011 deportation proceeding comported with due process and that, in any event, Mr. Miranda Rivera cannot establish prejudice because he cannot show a "reasonable likelihood" that his potential asylum claim would have been successful.

### A. Exhaustion of Administrative Remedies and Denial of Opportunity for Judicial Review

Mr. Miranda Rivera claims there was a fundamental defect in the 2011 deportation proceeding: the IJ failed to inform him that he might be eligible for asylum and withholding of removal. This, Mr. Miranda Rivera contends, invalidates his waiver of appellate rights, thereby excusing any failure to exhaust administrative remedies and improperly depriving him of the opportunity to obtain judicial review. The government, while maintaining the deportation proceeding was not constitutionally deficient, does not contest the legal effect of an invalid waiver of appellate rights.

As already stated by other judges in this district, an invalid waiver of appellate rights excuses the exhaustion requirements of § 1326(d)(1). *See, e.g.*, *United States v. Ramos-Ramirez*, 128 F. Supp. 3d 896, 899 (D. Md. 2015) ("Moreover, the exhaustion requirement of section 1326(d) must be excused when an alien's failure to exhaust results from an invalid waiver."); *United States v. Merino-Hernandez*, 46 F. Supp. 3d 602, 607 (D. Md. 2014) ("[T]he exhaustion requirement of § 1326(d)(1) must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." (alteration in original) (citation

omitted)). The same logic applies to the improper deprivation of judicial review factor under § 1326(d)(2). *See Mendoza-Lopez*, 481 U.S. at 840 ("The [IJ] permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation. Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."); *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) ("If Reyes did not validly waive his right of appeal, the first two requirements under § 1326(d) will be satisfied.").

The question, then, is whether Mr. Miranda Rivera made a valid waiver of his appellate rights. An alien's waiver of his appellate rights is invalid if it is not "knowingly and intelligently made." *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009) (citation omitted).[2] Mr. Miranda Rivera claims he could not have made a knowing and intelligent waiver because he waived his rights after being told by the IJ that he did not appear to be eligible for relief from deportation. For the reasons discussed below in the due process analysis, the IJ failed to provide Mr. Miranda Rivera with information she was required to provide under federal law. Because Mr. Miranda Rivera was deprived of crucial information regarding his eligibility for asylum, his waiver was not knowing and intelligent. Accordingly, the requirements of § 1326(d)(1) and (2) are satisfied.

**B. Fundamental Unfairness**

Mr. Miranda Rivera also has established that the 2011 deportation proceeding was fundamentally unfair. The Fourth Circuit applies a two-part inquiry for assessing whether the entry of a deportation order was fundamentally unfair: "To demonstrate fundamental unfairness" in the entry of the removal order, "a defendant must show that (1) his due process rights were

---

[2] "The government bears the burden of showing that an alien's waiver of his rights is knowing and intelligent." *Merino-Hernandez*, 46 F. Supp. 3d at 607. The government has not met that burden here.

violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664 (internal quotation marks omitted). The evidence in the record shows that Mr. Miranda Rivera was deprived of due process and that he suffered prejudice as a result.

    **a. Due Process**

The court finds persuasive the Ninth Circuit's explanation of "the extent of an IJ's duty to inform aliens of their eligibility for relief from removal":

> Immigration regulations require an IJ to inform an alien of "apparent eligibility" for relief. 8 C.F.R. § 1240.11(a)(2). We have interpreted "apparent eligibility" to mean "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief." *Moran–Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989). **We have repeatedly held that an IJ's failure to so advise an alien violates due process** and can serve as the basis for a collateral attack to a deportation order where, as here, the order is used as the predicate for an illegal reentry charge under § 1326.

*United States v. Lopez-Velasquez*, 629 F.3d 894, 896–97 (9th Cir. 2010) (emphasis added). In this case, the IJ's failure to inform Mr. Miranda Rivera of his ability to apply for asylum and withholding of removal deprived Mr. Miranda Rivera of his right to due process under the law.

The government argues that the IJ did not err when she failed to advise Mr. Miranda Rivera of his ability to apply for asylum because Mr. Miranda Rivera would not have been eligible, for two reasons: the statutory deadline for filing an asylum application had passed, and he did not allege persecution with a nexus to a protected status. This argument misapprehends the governing law.[3] The plain language of the federal regulation requires[4] an IJ to advise an alien that he may apply for asylum and withholding of removal (and make available the

---

[3] The government's arguments regarding the sufficiency or likely success of Mr. Miranda Rivera's asylum claim are more appropriately directed at challenging the prejudice prong of the fundamental unfairness requirement.

[4] There is no ambiguity in the regulation. If an alien expresses fear of persecution or harm, "the [IJ] **shall**" advise him of his rights. 8 C.F.R. § 1240.11(c)(1) (emphasis added).

5

appropriate applications and advise him of his right to obtain counsel) "[i]f the alien expresses fear of persecution or harm upon return to any of the countries to which the alien might be removed." 8 C.F.R. § 1240.11(c)(1).  Thus, to trigger the IJ's duty to advise, an alien need not lay out all of the facts that would support an asylum application—the only relevant inquiry is whether the alien expressed a "fear of persecution or harm."  Mr. Miranda Rivera clearly expressed a fear of harm from MS-13, the violent street gang that caused him to flee El Salvador in the first instance: "I was asked to join a gang and I didn't want to, so they just wanted to kill me." (Hr'g Tr. at 6).  This triggered the IJ's duty to advise him of his right to apply for asylum or withholding of removal.  The IJ's failure to advise violated Mr. Miranda Rivera's due process rights.  *Lopez-Velasquez*, 629 F.3d at 896–97.

### b. Prejudice

Mr. Miranda Rivera suffered prejudice as a result of the defective deportation proceedings.  "[T]o meet the actual prejudice requirement, [the detainee] must demonstrate 'that, but for the errors complained of, there was a reasonable probability that he would not have been deported.' This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Lopez-Collazo*, 824 F.3d at 462 (citations omitted) (quoting *El Shami*, 434 F.3d at 665).  Mr. Miranda Rivera claims he suffered prejudice because there was a reasonable probability he would have succeeded in his application had he been advised of his right to apply for asylum.  The government contends that Mr. Miranda Rivera cannot show a reasonable likelihood of success because his request for asylum was "based on a five-year-old attempted recruitment by a gang." (Opp'n Mot. Dismiss 8, ECF No. 25).

6

If, as the government suggests, Mr. Miranda Rivera's eligibility for asylum or withholding of removal rested solely on his fear of gang violence, he would not be able to establish a reasonable probability that he would not have been deported. Federal law requires that, to be eligible for asylum, "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see also Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) ("In order to gain . . . relief . . . [the applicant] must show that his persecution was on account of race, religion, nationality, membership in a particular social group, or political opinion." (internal quotation omitted)). Fear of gang violence alone is not enough.

The government's argument, however, does not present the whole picture. Its position on Mr. Miranda Rivera's eligibility for asylum relies on the statements provided by Mr. Miranda Rivera at his deportation proceeding. As noted by Mr. Miranda Rivera in his reply brief:

> [T]here is no way to determine from the prior removal record alone the precise legal basis on which Mr. Miranda Rivera's potential asylum [or withholding of removal] claim would have rested, because Mr. Miranda Rivera was deprived of the opportunity to apply for asylum [and withholding of removal], deprived of the right of counsel to assist him with his claim, and deprived of a hearing in which to develop his claim.

(Reply Mot. Dismiss 6, ECF No. 27). It would be unfair to evaluate the potential success of Mr. Miranda Rivera's application for asylum and withholding of removal by looking only to an underdeveloped record arising from a constitutionally deficient deportation proceeding.[5] If the IJ had not erred, and Mr. Miranda Rivera had proceeded with an asylum and withholding of removal application, there would have been an evidentiary hearing to ascertain the complete bases for his eligibility for asylum or withholding of removal. *See* 8 C.F.R. § 1240.11(c)(3) (requiring evidentiary hearing to resolve disputes of fact on applications for asylum).

---

[5] I find further support for this proposition in Mr. Miranda Rivera's discussion of the duty of IJs to develop the record.

7

The affidavit of Mr. Miranda Rivera, attached to his reply brief, sets forth grounds that probably would have been sufficient to grant him asylum. His affidavit establishes that a major part of the persecution he faced from the MS-13 gang was a result of his efforts to free his sister from the control of MS-13 gang members. (Reply Mot. Dismiss, Ex. A, Miranda Rivera Aff. ¶¶ 8–13, ECF No. 27-1). Familial membership constitutes a "particular social group," one of the grounds of persecution that qualifies a refugee for asylum. *See, e.g.*, *Crespin-Valladares v. Holder*, 632 F.3d 117, 125 (4th Cir. 2011) ("[T]he family provides a prototypical example of a particular social group." (internal quotation marks and citation omitted)). "To prove that persecution took place on account of family ties, an asylum applicant need not show that his family ties provide *the* central reason or even a dominant central reason for his persecution, [but] he must demonstrate that these ties are more than an incidental, tangential, superficial, or subordinate reason for his persecution." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015) (alterations in original) (internal quotation marks omitted) (quoting *Crespin-Valladares*, 632 F.3d at 127). Not only has the Fourth Circuit long recognized family ties as a particular social group, the Board of Immigration Appeals also accepted this interpretation of the governing law at the time Mr. Miranda Rivera was deported. *See, e.g.*, *Matter of C-A-*, 23 I. & N. Dec. 951, 959 (BIA 2006); *Matter of H-*, 21 I. & N. Dec. 337, 342 (BIA 1996).

Here, Mr. Miranda Rivera's affidavit presents circumstances similar to those in *Cordova v. Holder*, 759 F.3d 332 (4th Cir. 2014), where the Fourth Circuit held that the BIA erred in rejecting a family-based asylum claim arising from persecution by the MS-13 gang. The Fourth Circuit found that, although the applicant's refusal to join a gang was one of the reasons for his persecution, he also could have been persecuted because MS-13 believed his uncle and cousin to be members of a rival gang. *Cordova*, 759 F.3d at 339. The two grounds for persecution were

not mutually exclusive. Although Mr. Miranda Rivera was targeted in part for reneging on his feigned interest in joining MS-13, he also was targeted because he attempted to influence his sister to leave the gang. This is sufficient grounds on which to grant asylum or withholding of removal.[6] Mr. Miranda Rivera's affidavit provides evidence of what the record could have been had he been afforded the opportunity to proceed with his asylum and withholding of removal application. Based on this information, there is a reasonable probability his request would have been granted.[7]

The government also argues that Mr. Miranda Rivera would not have been eligible for asylum because he did not file within the one-year time period required under the relevant statute. This argument is not persuasive. First, the requirement that an alien apply for asylum within one year of entering the United States may be excused by demonstrating changed or extraordinary circumstances. 8 U.S.C. §1158(2)(B)–(E); 8 C.F.R. 208.4(a)(2). The federal regulations provide non-exhaustive examples of "extraordinary circumstances," including the "mental" or "legal disability" of the alien. 8 C.F.R. § 208.4(a)(5). Mr. Miranda Rivera was a minor when he entered the country and had undergone recent traumatic experiences. Further, the extraordinary circumstances inquiry is highly fact specific, and Mr. Miranda Rivera was deprived of the opportunity to develop a factual record; the court should not draw inferences

---

[6] The government also argues that his asylum application would not have been granted because Mr. Miranda Rivera stated at his deportation proceeding that he simply could move back to a different area of El Salvador. This conclusion is a significant leap from what actually was said at the hearing: "I was asked to join a gang and I didn't want to, so they just wanted to kill me. But I feel there's no other option. I'm just moving to another place in El Sa[l]vador. And my other concern was that my fiancé, she's three months pregnant and I just was looking for the chance to take her out of the country with me." (Hr'g Tr. 6:19–25). Given the language barriers and the lack of follow-up questioning, the court will not draw the inference that Mr. Miranda Rivera expected to be able to relocate safely to another area of El Salvador. Indeed, the actual events that occurred after his deportation show this to be patently untrue.

[7] Later aspects of Mr. Miranda Rivera's history corroborate the position that his persecution was tied to his familial connections. He was targeted by a rival gang after he was removed to El Salvador following the 2011 deportation proceedings in part because of his sister's ties to MS-13. (Miranda Rivera Aff. ¶¶ 19–27).

against Mr. Miranda Rivera that arise from an IJ's failure to advise.  Additionally, the government ignores Mr. Miranda Rivera's contention that he would be eligible for withholding of removal.  While this requires a higher standard of proof as to the likelihood of future harm, *see Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004), there can be no doubt that, in 2011, Mr. Miranda Rivera was likely to suffer future harm if he returned to El Salvador.  The analysis as to a protected nexus is the same for both asylum and withholding of removal, *see id.*, and withholding of removal does not have the same one-year statutory bar that is applied to asylum claims.  *See* 8 U.S.C. § 1231(b)(3).

      For these reasons, the court will grant Mr. Miranda Rivera's motion to dismiss the indictment and deny his motion to suppress as moot.

      A separate order follows.

August 30, 2016                                                    /S/
Date                                                               Catherine C. Blake
                                                                                 United States District Judge